UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-81141-BLOOM/Reinhart

MTELEHEALTH, LLC,

      Plaintiff,

v.

UNITED PARCEL SERVICE, INC.

      Defendant.

_____/

ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant United Parcel Service, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint, ECF No. [22] (the "Motion"). The Court has carefully reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the Motion is granted.

I.    BACKGROUND

Plaintiff Mtelehealth, LLC ("Plaintiff") initiated this lawsuit on February 27, 2018 in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County. Defendant United Parcel Service, Inc. ("Defendant") removed the action to this Court on August 24, 2018. ECF No. [1].

Plaintiff's Amended Complaint alleges that on September 29, 2017, Plaintiff shipped a package from Florida to Pennsylvania using Defendant's ground service. ECF No. [18] at ¶ 8. The package contained memorabilia valued at $59,500.00. *Id.* at ¶ 10. On October 4, 2017, Defendant notified Plaintiff that the package was damaged, and all contents of the package were missing. *Id.* at ¶ 16. Plaintiff demanded that Defendant return the package for examination, but

was informed that the package had been discarded. *Id.* at ¶¶ 17-18. Plaintiff seeks monetary

damages in the amount of $178,500.00 plus interest, attorney fees, and punitive damages. *Id.* at

"Wherefore" clause. Plaintiff brings claims for violations of the Carmack Amendment (Count I),

fraudulent conversion (Count II), negligence (Count III), negligent supervision (Count IV), and

violations of Florida's Civil Theft Statute (Count V).

Defendant filed the instant Motion on October 19, 2018. Plaintiff's Response and

Defendant's Reply timely followed. *See* ECF Nos. [23], [24].

## II.   LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a

complaint "does not need detailed factual allegations," it must provide "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the

defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on

"'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a

right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are

required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, which requests dismissal for "failure to state a claim upon which relief can be

granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the

plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in

favor of the plaintiff.  *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc*., 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III.    DISCUSSION

Enacted in 1906 as an amendment to the Interstate Commerce Act of 1887, the Carmack Amendment codifies a common law rule of strict liability on common carriers, and is now part of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14706. In general, the Carmack Amendment governs interstate cargo claims, controls and limits the liability of common carriers for in-transit cargo and preempts common or state law remedies that increase a common carrier's liability beyond the actual loss or injury to the property.  *See, e.g., Smith v.*

*United Parcel Serv.*, 296 F.3d 1244, 1246 (11th Cir. 2002) ("The Carmack Amendment creates a uniform rule for carrier liability when goods are shipped in interstate commerce.").  Moreover, the Carmack Amendment "provides the exclusive cause of action for interstate shipping contract claims."  *White v. Mayflower Transit, LLC*, 543 F.3d 581, 584 (9th Cir. 2008).  Thus, state law claims arising from failures in the transportation and delivery of goods are preempted.  *Smith*, 296 F.3d at 1246 (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913)); *see also Hansen v. Wheaton Van Lines, Inc.*, 486 F. Supp. 2d 1339, 1343-44 (S.D. Fla. 2006) ("The law is well established that the remedies available under the Carmack Amendment preempt all state, common and statutory law regarding the liability of an interstate common carrier for claims arising out of shipments within the purview of said statute.").

As an initial matter, the Court may take judicial notice of the UPS Terms attached to the Defendant's Motion, which are part of the shipping agreement. *See* ECF No. [22-1]. Judicial notice may be taken because the document is (1) central to plaintiff's claim and (2) undisputed. "In this context, "undisputed" means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  Plaintiff does not challenge the authenticity of the UPS terms, but contends that the UPS Terms are not central to Plaintiff's claims because it has alleged theft and spoliation of evidence, which are not contemplated by the UPS Terms.  ECF No. [23] at 6.  Irrespective of Plaintiff's allegations of theft and spoliation of evidence, the Court finds that the UPS Terms are central to Plaintiff's claims because they form part of the shipping agreement that underlies all of Plaintiff's claims.  Accordingly, as other courts have also done, the Court takes judicial notice of the UPS Terms. *See, e.g.*, *World Access USA Corp. v. AT&T Corp.*, No. 99-1864-CIV, 2000 WL 297845, at *2 (S.D. Fla. Feb. 2, 2000) ("A Court may … take judicial notice of tariffs not included in or attached to the complaint and

consider them in ruling on a Rule 12(b)(6) motion."); *Fulfillment Servs., Inc. v. United Parcel*

*Serv., Inc.*, No. CV 05-538 TUC DCB, 2006 WL 1061892, at \*5 (D. Ariz. Apr. 19, 2006) (taking

judicial notice of UPS Terms), *aff'd,* 528 F.3d 614 (9th Cir. 2008).

There is no dispute that Plaintiff agreed to the UPS Terms, which provide, in pertinent

part:

> UPS does not accept for transportation, and Shippers are prohibited from
> shipping:
>
> – Articles of unusual value, which shall be deemed to include, but are not limited
> to:
>
> • Any Package with an actual value of more than $50,000…

ECF No. [22-1] at § 3.1.  Additionally, the UPS Terms state that "UPS shall not be liable or

responsible for: loss or damage to articles of unusual value (as defined in these Terms)".  *Id.* at §

55.3.

The UPS Terms also expressly limit Defendant's liability for loss or damage to $100 or

the declared value of the package:

> UPS's liability for loss or damage to each UPS domestic Package or international
> Shipment, or to each pallet in a UPS Worldwide Express Freight® Service
> Shipment, is limited to a value of $100, except as set forth below. Unless a greater
> value is recorded in the declared value field of the UPS Source Document or the
> UPS Automated Shipping System used, the Shipper agrees that the released value
> of each domestic Package or international Shipment, or pallet is no greater than
> $100, which is a reasonable value under the circumstances surrounding the
> transportation, and that UPS shall not be liable for more than $100 for each
> domestic Package or international Shipment or pallet.
>
> To increase UPS's limit of liability for loss or damage above $100, the Shipper
> must declare a value in excess of $100 for each Package or pallet in the declared
> value field of the UPS Source Document or the UPS Automated Shipping System
> used and pay an additional charge. The Shipper cannot declare a value in excess
> of the maximum allowable limits set forth below. UPS shall not be liable under
> any circumstances for an amount in excess of the declared value of a domestic
> Package or international Shipment, or pallet. When a Shipper declares a value in
> excess of $100, it does not receive any form of insurance. Shippers desiring cargo
> insurance, all risk insurance, or another form of insurance should purchase such
> insurance from a third party.

For the reasons that follow, the Court finds that Plaintiff has failed to state a claim under the Carmack Amendment and Plaintiff's state law claims are preempted by the Carmack Amendment.

### A. Carmack Amendment Claim (Count I)

Defendant argues that Plaintiff's Carmack Amendment claim should be dismissed because (1) the shipping agreement barred Plaintiff from tendering the package at issue to Defendant in the first place and (2) because the shipping agreement limited Defendant's liability to $100. In response, Plaintiff argues that Defendant's terms and liability limitations do not apply because Defendant intentionally deprived Plaintiff of its property

First, Defendant argues that it cannot be held liable for the loss of or damage to the package because the package had a value over $50,000 and was therefore prohibited from being shipped via UPS. Courts have enforced carrier's limitations of liability for articles of unusual value, including the provision in the UPS Terms at issue here. *See, e.g.*, *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 929-31 (5th Cir. 1997) (finding carrier's terms and conditions of shipment stating that it would not accept certain items for transportation and denying liability for loss or damage resulting from transport of those items barred recovery); *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 385-86 (7th Cir. 2007) ("Our examination of the relevant pages from UPS's website satisfies us that UPS provided adequate notice that customers were not permitted to ship items of 'unusual value' . . . and that UPS would not be liable, nor would it offer insurance—even limited to $50,000—on the defined high-value items. . . . Nothing in the released value doctrine suggests that a common carrier is obliged to accept every package."); *King Jewelry, Inc. v. Fed. Express Corp.*, 316 F.3d 961, 962-63, 966 (9th Cir. 2003) (pursuant to article of unusual value exclusion of liability in shipping contract, carrier was not liable for

declared value of candelabra that contained "precious metals" and constituted "artwork," even where shipper told carrier's clerk at time of shipment that candelabra contained "bronze statuary").

Second, Defendant argues that even if Plaintiff could have properly tendered the package to Defendant, Defendant's liability was limited to $100 pursuant to the UPS Terms.  Because Plaintiff failed to allege that it declared a value for the package in excess of $100, it paid for any declared value above $100, or Defendant failed to pay Plaintiff $100, the Carmack Amendment claim fails.  Courts have upheld the limitation of a carrier's liability under declared value provisions.  *See, e.g.*, *Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 59-62 (2d Cir. 2000) (enforcing carrier's provision in tariff limiting liability to declared value and precluding all other damages)

Plaintiff apparently does not dispute that Defendant satisfied the requirements to limit its liability.  Instead, Plaintiff argues that Defendant's terms and liability limitations do not apply because Defendant intentionally deprived Plaintiff of its property.

Under the Carmack Amendment, an appropriation of property by the carrier for its own uses will vitiate limits on liability.  In *Glickfeld v. Howard Van Lines,* 213 F.2d 723, 727 (9th Cir. 1954), the Ninth Circuit outlined the scope of this "conversion exception":

> [I]f the property has been converted by the carrier, it would be against public policy to permit the carrier to limit its liability and thus to profit from its own misconduct. However, the cases are uniform in holding that the conversion doctrine is pertinent only when there has been a true conversion, i.e., where the carrier has appropriated the property for its own use or gain. The carrier may properly limit its liability where the conversion is by third parties or even by its own employees. In the latter circumstance, while the carrier may have been guilty of negligence in the selection of its employees, it has not been unjustly enriched, nor has it been guilty of any misconduct.

Case No. 18-cv-81141-BLOOM/Reinhart

Courts have interpreted *Glickfield* to mean that the conversion exception "only applies when a carrier has converted the property 'for its own use or gain.'" *Kemper Ins. Companies v. Fed. Exp. Corp.,* 252 F.3d 509, 515–16 (1st Cir. 2001) (collecting cases).  Here, Plaintiff has failed to allege facts from which the Court could reasonably infer that Defendant *itself* stole the property for its own use or gain.  Plaintiff is permitted leave to amend its Carmack Amendment claim.

## B.  State Law Claims (Counts II, III, IV, and V)

Defendant argues that the Carmack Amendment preempts Plaintiff's state law claims. Plaintiff responds that the Carmack Amendment does not preempt claims based on conduct separate and distinct from delivery, loss or damage to goods.  Plaintiff contends that its allegation that Defendant intentionally deprived Plaintiff of its property and discarded the evidence of its theft amounts to "separate and distinct" conduct.

The Carmack Amendment "preempts state law claims arising from failures in the transportation and delivery of goods."  *Smith*, 296 F.3d at 1246; *see also Atchison, Topeka & Santa Fe Railway Co. v. Harold*, 241 U.S. 371, 378 (1916) ("[t]he Carmack Amendment...was an assertion of the power of Congress over the subject of interstate shipments...which, in the nature of things, excluded state action"); *Intech, Inc. v. Consolidated Freightways, Inc.*, 836 F.2d 672, 677 (1st Cir. 1987) ("the Carmack Amendment provides the exclusive remedy" for "an action for damages against the delivering carrier").  The Eleventh Circuit in *Smith* considered whether plaintiff's state law claims for fraud, negligence, wantonness, or willfulness, and outrage based upon UPS's allegedly wrongful acts were preempted by the Carmack Amendment.  296 F.3d at 1246.  There, the plaintiffs argued that their claims were separate and distinct from UPS's contract of carriage to deliver goods because they had alleged that UPS accepted shipments for

8

delivery knowing that UPS had no intention of fulfilling or attempting to deliver and that UPS's intentional actions to deny deliveries were designed to inflict emotional distress. *Id.* at 1246-47, 49. The Court held that plaintiffs based their claims "on UPS's failure to provide them with particular transportation and delivery services," and therefore plaintiffs' "claims fall squarely within the preemption coverage of the Carmack Amendment." *Id.* at 1247. [1]

Here too Plaintiff's state law claims are based on damage or loss to its goods during transit by UPS. Plaintiff's contention of outright theft by Defendant does not alter the analysid that its claims arise from Defendant's failure to provide Plaintiff with particular transportation and delivery services. Therefore, Plaintiff's state law claims fall squarely within the preemption coverage of the Carmack Amendment.[2]

## IV.    CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant United Parcel Service, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint, **ECF No. [22]**, is **GRANTED**.

2. Plaintiff's state law claims (Counts II, III, IV, and V) are **DISMISSED with prejudice**.

3. Plaintiff's Carmack Amendment claim (Count I) is **DISMISSED without prejudice**. Plaintiff is permitted to file a Second Amended Complaint no later than **January 17, 2019**.

---

[1]    The case on which Plaintiff relies also found that the state law claims were preempted by the Carmack Amendment, noting that "the Eleventh Circuit has made clear that the Carmack Amendment preempts state law claims for all losses resulting from any failure to discharge a carrier's duty as to *any part of the agreed transportation*.'" *Starr Indem. & Liab. Co. v. CSX Transp., Inc.*, 2015 U.S. Dist. LEXIS 187702, *6 (quoting *Smith*, 296 F.3d at 1247).

[2]    The Court need not address Defendant's argument that the Federal Aviation Administration Authorization Act of 1994 would also preempt Plaintiff's state law claims or that the state law claims should also be dismissed for failing to satisfy the pleading standards.

Case No. 18-cv-81141-BLOOM/Reinhart

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of January, 2019.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record